AO 472  (Rev. 11/16)  Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
for the

Western District of Oklahoma

| | |
|---|---|
| United States of America<br>v.<br><br>Christopher Steven Ledbetter<br>*Defendant* | )<br>)<br>)  Case No.  M-20-255-SM<br>)<br>) |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted.  This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

   ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

      ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

      ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

      ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

      ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

      ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
         **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

   ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

   ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

   ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

## Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☐ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☐ Subject to lengthy period of incarceration if convicted
☐ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision
☒ History of violence or use of weapons
☐ History of alcohol or substance abuse
☐ Lack of stable employment
☒ Lack of stable residence
☐ Lack of financially responsible sureties
☐ Lack of significant community or family ties to this district

☐ Significant family or other ties outside the United States
☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☒ Prior attempt(s) to evade law enforcement
☒ Use of alias(es) or false documents
☐ Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

The Bail Reform Act provides that a "judicial officer shall order the pretrial release of the person . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The Bail Reform Act favors the pretrial release of defendants.

On June 10, 2020, the Court held a hearing on the government's request for Defendant's detention pending trial based upon risk of flight and danger to the community. Assistant United States Attorney Matt Dillon and Jessica Perry represented the government. Defendant appeared in person and with counsel, Michael Johnson.

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, regarding the release or detention of a defendant before trial seeks to ensure the Court carefully considers and contemplates the interests of the defendant and the public before the Court orders release or detention. The Court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the Court determines no sufficient condition or combination of conditions exists, the Court may order that Defendant be detained without bail pending trial.

The Court considers the four factors set forth in § 3142(g) to determine whether pretrial detention is warranted. The four factors are:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The relevant charge is unauthorized possession of a machine gun, so by its nature, it weighs against Defendant.

As to the weight of evidence against Defendant, the Court found probable cause at the preliminary hearing. Defendant admitted more than once to authorities that he knew his modification of and continued possession of the firearm were illegal. His mother and stepfather testified they knew Defendant had illegally modified and possessed the firearm. This factor weighs against Defendant.

With respect to Defendant's history and personal characteristics, Defendant has lived with his mother in Oklahoma for nearly three decades, save for his four years of service as a U.S. Marine. He received an honorable discharge and reports he is "top tier" and at the "top selection to reenlist." He obtained an Emergency Medical Technician certificate in 2017 and reports he has taken enough classes for an associate degree. He works for a family-owned (he is a part owner) drywall company. He lives in a shipping container located on his family's ten acres of land. He has outfitted the living space as a bunker, with sandbags and camouflage netting up top. Inside were two "Molotov" cocktail type devices and a few grenades. Defendant frequently posted online about making grenades. During Defendant's arrest, he told the officers that the select-fire rifle was in his car. He also had a Glock 19 firearm on him. Agents also found mortar and unknown explosives in Defendant's car. During an interview with agents, Defendant reports he modified the rifle and he knew it was illegal to do so.

Agent Rich testified that he spoke with an ex-girlfriend of Defendant. She reported that upon seeing a sign for Pig Hunting, Defendant talked about hunting cops. She stated Defendant would not go to jail because he would not be caged. Defendant also told her that he believes that authorities stole his firearm – and if he was not released there would be violence.

His mother, Joann Johnson, testified her son perceives the law in black and white – she also knew his possession of the modified weapon was against the law. She stated he believed he should be allowed to be armed as law-enforcement officers are. Video footage of a May 4, 2020 interaction with the McLoud Police Chief showed Defendant kitted out in full uniform and armed with an AR rifle. Defendant complained about McLoud police not listening to his complaints regarding an officer no longer employed by that police department. Ms. Johnson testified the officer visited his girlfriend who lived next door to her acreage. She complained they dumped trash in her receptables and then the officer impersonated being a higher-ranking officer. Ms. Johnson reported hearing choppers circling with frequency and that she has seen unidentified officers hiding nearby and surveilling her property. Defendant was aware of this as well and they both believed they were under a threatened attack of sorts from the McLoud police. She explained her son's bunker-style living quarters was for protection as he feared for his life and hers. Ms. Johnson testified she has a firearm in her glove box and also just purchased an AK style rifle the day before the hearing, after authorities seized her family's firearms. She also testified she knew Defendant's modification of the firearm was illegal. Defendant's stepfather said the same.

In the video, Defendant hurled expletives at the McLoud Chief of Police. In another video, he and friends are seen engaging in close quarter training, shooting at targets labeled "POLICE." Another video filmed and posted by Defendant in early May 2020 showed him not stopping for law enforcement. Defendant is heard preparing his rifle -- he called his mother and told his stepfather to "go get the guns ready." In another video filmed by Defendant and posted in early May 2020, Defendant, Ms. Johnson and his stepfather are at the Oklahoma City Capitol. Defendant states he will use all weapons in self-defense and "all of the banned weapons for the intended purpose of killing terrorists, foreign and domestic…." Defendant referred to terrorist laws and that the police were the equivalent of terrorists. And in another early May video Defendant filmed the day after an "attempted raid on my family by McLoud PD" Defendant is engaging with a McLoud police officer. The word "Boogaloo!" comes across the screen at the end of the video. Although defense counsel argued the definition from the Urban Dictionary differed, the understood meaning of this term "is the new far-right slang for Civil War."

The Court has concerns with Defendant's affiliation with the "New Sons of Liberty" group, his beliefs that law enforcement are the enemy, his antagonizing of police officials, and his providing false identification to a police officer, and his refusal to follows laws with which he does not agree.  Defendant is not just "mouthy" as defense counsel argued -- he used vehemently violent language and incendiary threats regarding police officers.  He believes the police are the "aggressors" and frequently warned officers that he believed they violated his rights because they were permitted to have "weapons, guns, or knives."  Defendant made statements regarding how he will shoot back if threatened, that he will not submit to laws with which he does not agree, and that he does not believe he should have to disarm.  The Court has concerns with Defendant's seemingly spiraling mental health and his increasingly agitated state of mind since early May 2020.

The Court considered Ms. Johnson as a third-party custodian.  Her testimony and reported statements do not suggest she would report any violations to the U.S. Probation Office.  Similarly, location monitoring would not prevent Defendant from accessing a firearm.  The Court also has grave concerns about a pretrial services officer's ability to discuss a violation with Defendant and the officer's ability to access the compound. The Court considered alternative places for Defendant to live and a restriction on social acquaintances and social media, but finds neither would ensure an officer's access or ensure Defendant could not access and post on social media under another name.

With respect to the fourth factor, the Court has concerns about the danger posed to the community should it release Defendant. Given the Defendant's propensity to admit his refusal to follow the laws that apply equally to all citizens, and Defendant's increased self-posting of disturbing and threatening videos, the Court has grave concerns regarding the safety of the U.S. Probation Service Officers as well as any other officer who might seek to report Defendant's noncompliance with even the most stringent of release conditions.

After consideration of all of the relevant factors above, the Court finds that the government has established by clear and convincing evidence that Defendant poses a risk of danger to the community.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:  June 17, 2020

SUZANNE MITCHELL, UNITED STATES MAGISTRATE JUDGE