Exhibit 1

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
        -vs-                    )   Case No. CR-20-168-G
                                )
CHRISTOPHER STEVEN LEDBETTER,   )
                                )
        Defendant.             )

\* \* \* \* \* \* \*

TRANSCRIPT OF PROCEEDINGS

HAD ON JUNE 26, 2020, AT 9:25 A.M.

BEFORE THE HONORABLE CHARLES B. GOODWIN

U.S. DISTRICT JUDGE, PRESIDING

\* \* \* \* \* \* \*

CHANGE OF PLEA

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

CHRISTINA L. CLARK, RPR, CRR
United States Court Reporter
200 N.W. Fourth Street, Suite 5419
Oklahoma City, Oklahoma  73102
christina_clark@okwd.uscourts.gov - ph(405)609-5123

A P P E A R A N C E S

ON BEHALF OF THE GOVERNMENT:

    Mr. Matthew B. Dillon
    Ms. Jessica L. Perry
    Assistant United States Attorneys
    U.S. Attorney's Office
    210 West Park Avenue
    Suite 400
    Oklahoma City, Oklahoma 73102


ON BEHALF OF THE DEFENDANT:

    Mr. Michael S. Johnson
    LOPEZ AND JOHNSON
    4101 N. Classen
    Suite A
    Oklahoma City, Oklahoma 73118

1        **P R O C E E D I N G S**

2        (The following proceedings were had June 26, 2020, with

3    Court, counsel, and defendant present:)

4            THE COURT:  Morning, everyone.  The Court calls the

5    case of United States vs. Christopher Steven Ledbetter.  It's

6    Case No. CR-20-168.

7        The defendant has previously appeared in court on a

8    complaint that had been filed by the government.  The

9    government has now filed an Information, and the defendant has

10    indicated that he wishes to enter a plea of guilty.

11        I'll have counsel make their appearance.

12            MR. DILLON:  Matt Dillon and Jessica Perry on behalf

13    of the United States.

14            THE COURT:  Thank you.

15            MR. JOHNSON:  Good morning, your Honor.  Mike

16    Johnson on behalf of Mr. Ledbetter, who is present at counsel

17    table.

18            THE COURT:  All right.  Thank you.

19        Couple of housekeeping matters before we start in

20    earnest.

21        As far as health restrictions, looks like everybody is

22    appropriately spaced.  As far as counsel, I'll leave it up to

23    you about whether you want to wear a mask or not.

24        If you are speaking to the Court, then definitely take

25    your mask off.  Otherwise, I'm going to let everybody be

1 | responsible about their own decisions in that regard.

2 |       Second, is the government in compliance with the Justice

3 | For All Act?

4 |             MR. DILLON:  Yes, your Honor.

5 |             THE COURT:  To your knowledge, are there any victims

6 | who wish to be heard in the proceeding?

7 |             MR. DILLON:  No, your Honor.

8 |             THE COURT:  Okay.  Very good.

9 |       Okay.  I'm going to have the defendant come forward to

10 | the podium -- or I'll have counsel be at the podium, the

11 | defendant there at the desk right next to it.

12 |       All right.  Sir, just some initial questions.  First, I

13 | take it you understand the English language and have no need

14 | for an interpreter; is that correct?

15 |             THE DEFENDANT:  Yes, sir.

16 |             THE COURT:  Okay.  Mr. Johnson, is it correct that

17 | your client has decided to enter a plea of guilty?

18 |             MR. JOHNSON:  Yes, sir.

19 |             THE COURT:  All right.  And I've received a plea

20 | agreement.  Is the plea being made in accordance with that

21 | agreement?

22 |             MR. JOHNSON:  It is, your Honor.

23 |             THE COURT:  Okay.  All right.

24 |       Mr. Ledbetter, let me tell you a little bit about this

25 | proceeding and what we're going to do.  I'm going to ask you a

1    long, long, long series of questions about whether you do
2    truly wish to enter a plea of guilty today.  And the reason
3    that we do that is because it's an important choice.  You're
4    giving up rights that are guaranteed to you by the
5    constitution by pleading guilty.  It's also generally a choice
6    that you cannot take back.
7         Do you understand?
8              THE DEFENDANT:  Yes, sir.
9              THE COURT:  Okay.  Mr. Buckle is going to place you
10   under oath now.
11             THE CLERK:  Please raise your right hand as best you
12   can.
13        (Defendant sworn.)
14             THE CLERK:  Thank you.
15             THE COURT:  All right.  You are now under oath.  And
16   while you are not required to make any statement with regard
17   to the charges against you, you need to know that if you do,
18   then your statement could later be used against you.
19        Further, if you make a false statement to the Court, you
20   could be prosecuted for perjury.
21        Do you understand?
22             THE DEFENDANT:  Yes, sir.
23             THE COURT:  Okay.  Would you state your name and
24   your age for the record.
25             THE DEFENDANT:  My name is Christopher Steven

1  Ledbetter, and I am 29 years old.

2          THE COURT:  Okay.  And are you the Christopher

3  Steven Ledbetter that's named in the Information that's been

4  filed in the case?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  Tell me a little bit about your

7  education.  How far did you go in school?

8          THE DEFENDANT:  I graduated high school in McLoud,

9  and I did two years at UCO with an international relations

10 major.  And then I did an EMT basic course at OCCC in 2017.

11         THE COURT:  When did you graduate from McLoud?

12         THE DEFENDANT:  In 2009, sir.

13         THE COURT:  Okay.  These are standard questions.

14 Don't take any offense.  As you stand here today, are you

15 under the influence of any alcohol or drugs or medication that

16 could affect your ability to understand what's going on today?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  All right.  And, similarly, have you

19 ever been treated for any mental illness or condition that

20 would affect your ability to understand what is going on and

21 the choices that you're making?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  Okay.  Do you believe that you do fully

24 understand and appreciate everything that's happening today?

25         THE DEFENDANT:  Yes, of course, your Honor.

1          THE COURT:  Okay.  All right.

2      I'll ask Mr. Johnson, do you have any doubt regarding the

3  competence of your client?

4          MR. JOHNSON:  I do not, your Honor.

5          THE COURT:  All right.  I will ask counsel for the

6  government, have you seen anything that would give you any

7  doubt regarding the competency of the defendant to enter a

8  plea?

9          MR. DILLON:  No, your Honor.

10         THE COURT:  As I say, that's a set of standard

11 questions that we ask everyone.

12     There being no issue there as far as competency, let's

13 move on and talk about the charges.

14     So the government has filed a criminal charge against

15 you, and the formal document where that charge is made is

16 called an Information.  Have you received a copy of that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Have you had an adequate opportunity to

19 read it and to visit with your attorney about it?

20         THE DEFENDANT:  Yes, sir, I read it all.

21         THE COURT:  Okay.  Have you ever had -- pardon me --

22 well, let's do it this way.

23     I'm going to have the government summarize the charges at

24 issue and the potential range of punishment, including any

25 mandatory minimum penalty that may apply.

1              MR. DILLON:  Yes, your Honor.  The defendant is

2    charged with a one-count Information.  It alleges that on June

3    4th of 2020, in the Western District of Oklahoma, the

4    defendant knowingly possessed a machine gun, specifically a

5    Two Rivers Arms AK-47-style carbine, bearing Serial No.

6    GV2300.  That is in violation of Title 18 United States Code

7    Section 9220 -- I'm sorry -- 01.

8         If found guilty of that offense, the defendant faces

9    punishment of not more than ten years of imprisonment, a fine

10   of not more than $250,000, or both fine and imprisonment, a

11   term of supervised release of not more than three years, and a

12   $100 special assessment.

13             THE COURT:  All right.

14        Mr. Johnson, do you agree that's a correct summary of the

15   charge and the potential range of punishment?

16             MR. JOHNSON:  I do, your Honor.

17             THE COURT:  All right.  Sir, the questions for you

18   then are, first, do you fully understand the charge against

19   you?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And do you understand the potential

22   range of punishment that would apply as a result of a guilty

23   plea to that charge?

24             THE DEFENDANT:  Yes, I do.

25             THE COURT:  Okay.  Let's talk about your right to be

1    charged by Indictment.  I have a written waiver of that, but I

2    want to visit with you about it and make sure you understand.

3         So what you need to know is you have a constitutional

4    right to be charged by an Indictment of a grand jury, but you

5    can waive that right and consent to being charged through the

6    Information that's been filed in the case.

7         For your information, a grand jury is composed of at

8    least 16 and not more than 23 people, and at least 12 grand

9    jurors must agree that there is probable cause to believe that

10   you committed a crime before you can be charged with it.

11        An Information, on the other hand, is merely signed by

12   the United States Attorney or an Assistant United States

13   Attorney.

14        In order for the Court to proceed then on the

15   Information, you need to give up your right to be charged by

16   Indictment.  And you've indicated, through that written form

17   that I've received, that you do intend to give up that right.

18   Is that correct?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  All right.  Have any threats or promises

21   been made to you to get you to waive that right to be charged

22   by Indictment?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  Okay.  The Court finds that the

25   defendant has knowingly and voluntarily waived his right to be

1    charged by Indictment and an executed copy of that waiver will

2    be filed of record in the case.

3        All right.  Next let's talk about your right to a jury

4    trial.  And, again, I've received a written waiver of that,

5    but I want to visit with you about it and make sure you fully

6    understand.

7        So if you plead not guilty, then you have the right to a

8    speedy and public trial by jury.  Along with that, you would

9    have the right to counsel at all stages.  And if you cannot

10   afford an attorney, one would be appointed to represent you,

11   as Mr. Johnson has.

12       You would have the right to see and hear witnesses who

13   present testimony against you and to cross-examine them.  You

14   would have the right to use the subpoena power of the Court to

15   compel witnesses and other evidence to be presented on your

16   behalf.

17       You would have the right to not incriminate yourself.

18   That is, at trial you could choose not to testify, and the

19   Court would instruct that there be no adverse inference

20   against you because of that choice.

21       Ultimately, you would be presumed innocent until proven,

22   beyond a reasonable doubt to a unanimous 12-person jury, that

23   you are guilty of the crime with which you are accused.

24       Do you understand that by pleading guilty you will have

25   no trial and you'll give up all of those rights that I just

1    listed?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  All right.  I understand -- as I say, I

4    have received that you've executed a written waiver of jury

5    trial.  Is that correct?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  All right.  Is it still your intent to

8    waive that right today?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Okay.  The Court finds that the

11   defendant has knowingly and voluntarily waived his right to a

12   jury trial, and an executed copy of that will be filed of

13   record in the case.

14        Okay.  Next I want to talk to you a little about

15   sentencing and that process.  What you need to know is that

16   under a federal statute, the Sentencing Reform Act of 1984,

17   the United States Sentencing Commission has issued guidelines

18   that judges consult on an advisory basis in deciding the

19   sentence in any criminal case.

20        So if you're found guilty, whether by jury trial or by

21   plea of guilty, the process works roughly like this:  A

22   probation officer will come and meet with you, they will talk

23   to you about your personal history, your criminal history,

24   everything about you, and then issue what's called a

25   presentence investigation report.  That report is used by the

1    Court in deciding the sentence to be imposed in the case.

2        Importantly, both you and the government have the

3    opportunity to give input into the report prior to the final

4    report being issued.  And then once the report is issued, you

5    both have -- both you and the government have the right to

6    object to any findings or conclusions in the report that you

7    disagree with.  At that point I hold a hearing and I decide

8    any of those disputes by a standard known as the preponderance

9    of the evidence.

10       In deciding what sentence should be imposed, importantly,

11   I consider the information in the report, I calculate the

12   advisory guideline range under the sentencing guidelines, and

13   then I consider that guideline range, I consider possible

14   departures from the guidelines, and I consider other factors

15   set forth by statute at 18 U.S.C. Section 3553 in deciding

16   what is an appropriate sentence in the case.

17       Are you with me so far?

18            THE DEFENDANT:  Yes, sir.

19            THE COURT:  All right.  That's a lot of information,

20   but it's important.

21       Another piece of important information is that I'm not

22   bound by the guideline range.  Although I consider it, I have

23   the discretion to impose a sentence that's more severe or less

24   severe than what's called for under the guidelines.

25       Understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  All right.  Do you understand that, as a

3   result of your guilty plea, some facts that may have an effect

4   on the severity of your sentence that will be determined by me

5   and not by a jury?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  And do you understand that I

8   will not be able to determine the advisory guideline range for

9   your case or the sentence for your case until after we go

10  through that whole process that I just described?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And so that means that, because we have

13  not yet gone through that process, as you stand here today

14  there is no way for you to know what the guideline range is

15  going to be or, ultimately, what the sentence is going to be.

16     Do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Okay.  Did you also understand that I

19  have the discretion to impose a sentence that's more severe or

20  less severe than what's called for under the guidelines?

21         THE DEFENDANT:  Yes, I do, your Honor.

22         THE COURT:  Okay.  Knowing all of that, is it still

23  your intent to plead guilty?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Okay.  I've been presented with a plea

1  agreement.  Did you have the opportunity to review and discuss

2  that agreement with your attorney before you signed it?

3            THE DEFENDANT:  I did, sir.

4            THE COURT:  Okay.  Are there any statements in the

5  plea agreement that you do not understand or wish to have

6  clarified?

7            THE DEFENDANT:  No, sir.  I understood them.

8            THE COURT:  Okay.  Again, this is a standard

9  question.  Were you under the influence of any alcohol or drug

10  or medication or mental health condition at the time you

11  signed that agreement that would prevent you -- that would

12  have prevented you from fully understanding what you were

13  doing?

14            THE DEFENDANT:  No, sir.

15            THE COURT:  Okay.  I want to visit with you

16  specifically about the waivers in that plea agreement.  As a

17  general matter, the law gives you certain rights and you have

18  those rights unless you choose to waive them.

19      Understand that?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  Okay.  And do you understand that in the

22  plea agreement you are waiving some of your rights?

23            THE DEFENDANT:  Yes, sir.

24            THE COURT:  And, specifically, you are waiving your

25  right to appeal the sentence that I impose in the case as long

1    as that sentence is within or below the guideline range.

2        Do you understand that?

3            THE DEFENDANT:  Yes, sir, that's understood.

4            THE COURT:  Okay.  Are you waiving that right to

5    appeal even though, as we discussed, as you stand here today,

6    you do not know yet what the sentence I impose will be or what

7    the guideline range will be?

8            THE DEFENDANT:  Yes, I understand that, sir.

9            THE COURT:  Okay.  Do you understand that,

10   regardless of the plea agreement, I will make the decision

11   about your sentence and no one else?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  And I'm not bound by the recommendations

14   of your attorney or the government's attorney or the probation

15   office or anyone?

16       Do you understand that?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Okay.  Do you understand that you do not

19   have the right to withdraw your plea if, ultimately, I choose

20   a sentence that's different than the one that you or your

21   attorney or anybody else might think is correct?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Okay.  In light of everything we've

24   talked about, do you still wish to plead guilty?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Okay.  Do you understand that, by

2     pleading guilty, you would be subject to a variety of

3     sentencing options that might be imposed instead of or in

4     addition to imprisonment?

5          So in deciding the sentence in the case, I may require

6     that you serve a period of imprisonment.  I may require that

7     you serve a term of probation.  I may require that, after any

8     imprisonment, you serve a period of supervised release.

9          I may order that you forfeit property or pay a fine or a

10    special assessment or pay restitution if there are any victims

11    at issue here.

12         Do you understand that all of those are options that

13    might be imposed by the Court?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Okay.  Do you understand that if you are

16    to violate any of those additional requirements that the Court

17    might impose, then you could, in turn, be subject to an

18    additional term of imprisonment or other penalties?

19              THE DEFENDANT:  I do, sir.

20              THE COURT:  Okay.  Do you understand that in the

21    federal system parole has been abolished and so there is no

22    chance that you would be released on parole?

23              THE DEFENDANT:  Yes, sir.

24              THE COURT:  Okay.  Has anyone threatened you in

25    order to get you to plead guilty?

1            THE DEFENDANT:  No, sir.

2            THE COURT:  Has anyone promised you any sort of

3    benefit in order to get you to plead guilty other than what's

4    reflected in the plea agreement?

5            THE DEFENDANT:  No, sir.

6            THE COURT:  Okay.  I take it that you are a United

7    States citizen?

8            THE DEFENDANT:  Yes, I am, sir.

9            THE COURT:  All right.  Do you understand that the

10   crime to which you are pleading guilty is a felony offense?

11   And if your plea is accepted, you will be officially

12   adjudicated guilty of that offense.

13       And, as a result of that, you may be deprived of valuable

14   civil rights, including the right to vote or the right to hold

15   public office, the right to serve on a jury, and the right to

16   possess any kind of firearm?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Okay.  Are you totally satisfied with

19   the quality of services that have been provided to you by your

20   attorney?

21           THE DEFENDANT:  I am, sir.

22           THE COURT:  Okay.  All right.  Ultimately, then,

23   knowing all of the rights that you have and would be waiving

24   and fully understanding the charge against you and the

25   potential range of punishment on that charge, how do you plead

1    to Count 1 of the Information?

2              THE DEFENDANT:  I plead guilty, your Honor.

3              THE COURT:  All right.  I want you to tell me a

4    little bit about what happened regarding the incident in

5    question in your own words.  But to facilitate that, I'm going

6    to let counsel for the government ask a few questions about

7    the elements at issue.

8              MR. DILLON:  Thank you, your Honor.

9                        **CHRISTOPHER LEDBETTER,**

10   having been previously duly sworn, was examined and testified

11   as follows:

12                            **EXAMINATION**

13   <u>BY MR. DILLON</u>

14   Q    Mr. Ledbetter, on June 4th of this year, did you possess

15   an AK-47-style carbine that is listed in the Information?

16   A    Yes, I did.  Serial No. GV2300.

17   Q    Thank you.

18        Had you modified that firearm to automatically shoot more

19   than one shot without manually reloading by a single function

20   of the trigger?

21   A    Yes.  To a select fire.

22   Q    Had you received any authority from the United States to

23   possess such a firearm?

24   A    No, I did not.

25   Q    Did you manufacture the two grenades and the two Molotov

1   cocktails that were seized on June 4th of 2020?

2   A    Yes, I did.

3   Q    Did all of these acts occur in the Western District of

4   Oklahoma?

5   A    Yes, they did.

6            MR. DILLON:  No further questions, your Honor.

7            THE COURT:  All right.

8       Mr. Johnson, did you have any additional questions

9   regarding the factual basis for the plea?

10           MR. JOHNSON:  I do not, your Honor.

11           THE COURT:  All right.  Okay.

12      Does the government know of any reason that the Court

13   should not accept the plea of guilty?

14           MR. DILLON:  No, your Honor.  I did neglect, when I

15   read off the charges of the Information, to include to the

16   Court that there is a forfeiture allegation.

17           THE COURT:  All right.

18      And, sir, did you understand that, that one of the

19   allegations that's made in the Information that's been filed

20   is what's called a forfeiture allegation that would require

21   you to forfeit the property that's listed?

22      Did you understand that?

23           THE DEFENDANT:  Yes.  As I understood it, they told

24   me every Kalashnikov (unintelligible), anything that would fit

25   in it as a magazine or all the ammo, that they were keeping

1    all of that that would work on that rifle, your Honor.

2              THE COURT:  Is that correct?

3              MR. DILLON:  Yes, your Honor.  It also includes the

4    AK-47 itself and then any explosive items or components

5    thereof.

6              THE COURT:  All right.

7         Did you understand that, sir?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Okay.  All right.

10        With that then, does the government know of any reason

11   that the Court should not accept the plea of guilty?

12             MR. DILLON:  No, your Honor.

13             THE COURT:  Does the defendant know of any reason

14   that the Court should not accept the plea of guilty?

15             MR. JOHNSON:  No, your Honor.

16             THE COURT:  Okay.

17        Sir, based on everything we've discussed, do you still

18   wish to plead guilty today?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  All right.

21        Having considered the sworn testimony of the defendant

22   and all other information presented, the Court finds that the

23   defendant is fully competent and capable of entering a plea;

24   that he is knowingly, voluntarily, and intelligently entering

25   his plea of guilty; that he understands the charge and the

1   consequences of his plea; and that there is a factual basis

2   for the plea of guilty.  Therefore, the Court accepts the plea

3   of guilty to the charges set forth in the Information.

4        Is there anything we need to take up as far as detention

5   in the case?

6             MR. DILLON:  I don't believe so, your Honor.

7             MR. JOHNSON:  Judge, I'll make my standard request,

8   but I think you're going to tell me to go address it with the

9   marshals.  Pottawatomie County is -- does not have a very

10  receptive attorney room.  In fact, it's almost impossible to

11  get an attorney visit out there within any meaningful

12  schedule.

13       I would ask that he be transferred either to Logan

14  County, Grady County, or even Tillman County.  But I've made

15  this request every time and been denied.  So I will take that

16  up with the marshals.

17            THE COURT:  I understand, and I will deny the

18  request again.  I hope that we get a better accommodation on

19  that, but until then we all are just going to have to struggle

20  along.

21            MR. JOHNSON:  Yes, sir.

22            THE COURT:  So with that, anything further from the

23  defendant?

24            MR. JOHNSON:  No, your Honor.

25            THE COURT:  Anything further from the government?

1          MR. DILLON:  No, your Honor.

2          THE COURT:  Sir, do you have any questions about

3   anything that we've talked about?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  All right.  Or anything else?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Okay.  You're remanded to the custody of

8   the United States marshal pending sentencing in the case.  As

9   I said, the next step in the process is preparation of that

10  presentence report, and then I will set, in 90 days, the -- or

11  approximately 90 days a presentence -- or a hearing, and we'll

12  determine the sentence at that time.

13      Understood?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.  We are adjourned.

16

17              (Proceedings concluded at 9:45 a.m.)

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2    I, Christina L. Clark, Federal Official Realtime Court

3    Reporter, in and for the United States District Court for the

4    Western District of Oklahoma, do hereby certify that pursuant

5    to Section 753, Title 28, United States Code that the

6    foregoing is a true and correct transcript of the

7    stenographically reported proceedings held in the

8    above-entitled matter and that the transcript page format is

9    in conformance with the regulations of the Judicial Conference

10   of the United States.

11

12        Dated this 20th day of April, 2021.

13

14                                s/CHRISTINA L. CLARK_____
                                  Christina L. Clark, RPR, CRR
15

16

17

18

19

20

21

22

23

24

25

CHRISTINA L. CLARK, RPR, CRR
United States Court Reporter
200 N.W. Fourth Street, Suite 5419
Oklahoma City, Oklahoma  73102
christina_clark@okwd.uscourts.gov – ph(405)609-5123