# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CR-20-168-G |
| | )   Case No. CIV-21-331-G |
| CHRISTOPHER STEVEN LEDBETTER, | ) |
| | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Now before the Court is Defendant Christopher Steven Ledbetter's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 50), seeking to vacate his sentence. The Government has submitted a Response (Doc. No. 58), and Defendant has replied (Doc. No. 59). After careful consideration of the parties' arguments, the relevant authorities, and the case record, the Court determines that no evidentiary hearing is necessary and that the Motion should be denied on the existing record.[1]

## I. Background

On June 4, 2020, the Federal Bureau of Investigation ("FBI") arrested Defendant pursuant to a state arrest warrant.[2] Upon Defendant's arrest, agents asked Defendant if he

---

[1] No evidentiary hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996).

[2] Except where specifically noted, the factual account provided herein is drawn from the Final Presentence Investigation Report ("PSR") (Doc. No. 37), which was adopted in relevant part by the Court at sentencing.

had any weapons in his vehicle. Defendant admitted that he had a rifle in his vehicle and that the rifle was "select fire." The agents then conducted a limited search of Defendant's vehicle for officer safety and located a Two Rivers Arms, Avtomat Kalashnikov (AK-47) style carbine (the "AK Rifle").

Following his arrest, agents advised Defendant of his *Miranda* rights. Defendant waived his *Miranda* rights and agreed to speak with agents. Defendant told the agents that he had purchased the AK Rifle in Oklahoma City and had modified the rifle for select fire. Defendant admitted that he knew such a modification was illegal and further admitted to modifying at least one other rifle to fire "fully auto."

The day of Defendant's arrest, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") examined the AK Rifle and determined that the AK Rifle operated as a machinegun. A federal search warrant was executed at Defendant's residence that same day. During the search, agents located several weapons and dangerous items, including two homemade grenades and two "Molotov Cocktails" that were later confirmed to be explosive devices.

The next day, June 5, 2020, Defendant was charged in a one-count Criminal Complaint in this Court, alleging that on or about June 4, 2020, Defendant possessed a machinegun in violation of 18 U.S.C. § 922(o)(1). An arrest warrant was issued on the Criminal Complaint. *See* Doc. Nos. 1, 2.

On June 26, 2020, Defendant pled guilty to a one-count Information charging him with possession of a machinegun in violation of 18 U.S.C. § 922(o)(1). *See* Doc. Nos. 22, 24, 25, 26, 27, 28, 29. The parties presented to the Court a signed plea agreement, in which

Defendant among other things agreed to "waive[] the right to appeal Defendant's sentence as imposed by the Court . . . and the manner in which the sentence is determined," with the lone exception that "[i]f the sentence is above the advisory Guidelines range determined by the Court to apply to Defendant's case" then Defendant had the "right to appeal specifically the substantive reasonableness of Defendant's sentence." Plea Agreement (Doc. No. 26) at 9. Further, Defendant agreed to "waive[] the right to collaterally challenge or move to modify (under 28 U.S.C. § 2255, 18 U.S.C. § 3582(c)(2), or any other ground) Defendant's conviction or sentence, . . . except with respect to claims of ineffective assistance of counsel." *Id.*

Prior to accepting the plea agreement and Defendant's guilty plea, the Court advised Defendant in open court of the following, among other things: (1) the full range of punishment that he would face upon pleading guilty, and (2) the rights Defendant would waive by pleading guilty including the right to appeal or collaterally attack his sentence except under limited circumstances. *See* Plea Hr'g Tr. 14:15-15:8 (Doc. No. 51). Defendant represented to the Court that he understood all statements contained in the Plea Agreement and understood what he was giving up by pleading guilty, including his appellate rights, and that he had not been threatened or promised anything to induce him to plead guilty. *See id.* at 16:24-17:5. After confirming that Defendant was "totally satisfied with the quality of services that have been provided to [Defendant] by [his] attorney," the Court found that Defendant was competent to enter a plea of guilty, that he understood the charge and the potential punishment on that charge, that he was knowingly,

voluntarily, and intelligently entering a plea of guilty to the charge, and that there was a factual basis for the plea of guilty. *Id.* at 17:18-21, 20:20-21:3.

Prior to Defendant's sentencing, the United States Probation Office prepared a Final Presentence Investigation Report or "PSR" (Doc. No. 37). On December 17, 2020, the Court held a sentencing hearing and, after ruling on the disputed portions of the PSR as necessary and adopting the undisputed portions of the PSR as findings of the Court, determined that the advisory imprisonment range under the United States Sentencing Guidelines was 57 to 71 months. *See* Statement of Reasons (Doc. No. 47).

At the sentencing hearing, the Court reminded Defendant of his appellate waivers. *See* Sent'g Hr'g Tr. 88:3-16 (Doc. No. 53). The Court sentenced Defendant to 57 months' imprisonment—the bottom of that range—followed by three years' supervised release. *See id.* at 50:16-24, 86:19-25; *see also* J. (Doc. No. 46).

On August 11, 2021, Defendant filed a Notice of Appeal to the Tenth Circuit Court of Appeals. *See* Doc. No. 60. The Tenth Circuit dismissed Defendant's appeal as untimely and transferred jurisdiction back to the Court on August 17, 2021. *See* USCA Mandate (Doc. No. 66).

## II. Discussion

Under 28 U.S.C. § 2255, a prisoner in custody serving a federal sentence may move to vacate, set aside, or correct his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

In his Motion, Defendant seeks to have his sentence vacated. *See* Def.'s Mot. (Doc. No. 50) at 12. Liberally construed, Defendant's request for relief is premised on four grounds: (1) that his federal arrest warrant was defective, (2) that the AK Rifle met the legal definition of 'machinegun' when Defendant originally purchased the firearm, (3) that the FBI exceeded the scope of the search warrant when they took property from Defendant's residence, and (4) ineffective assistance of counsel. *See id*. at 4-8.

As to claims one, two, and three, the Government argues that Defendant has waived those claims, that they are procedurally barred, and that they have no merit. *See* Gov't's Resp. (Doc. No. 58) at 12-22. As to claim four, the Government contends that Defendant cannot establish either deficient performance by counsel or prejudice, as required to show an entitlement to relief under *Strickland v. Washington*, 466 U.S. 668 (1984). *See id.* at 23-28.

    *A. Claims One, Two, and Three*

The Government argues that, through his Plea Agreement, Defendant waived the ability to bring claims that his arrest was unauthorized, that the AK Rifle met the legal definition of a "machinegun" when Defendant originally purchased the firearm, and that the FBI exceeded the scope of the relevant search warrant when they took property from Defendant's residence. *See* Gov't's Resp. at 12-17.

"[A] waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the

5

waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). Courts consider the following factors when deciding whether to enforce a waiver of collateral attack rights: (1) whether the § 2255 motion falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived his right to bring a § 2255 motion, and (3) whether enforcing the waiver would result in a miscarriage of justice. *See id.*; *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004); *United States v. Walker*, No. CIV-21-1176-D, 2022 WL 2019972, at *1 (W.D. Okla. June 6, 2022).

*1. Scope of Waiver*

The Court agrees with the Government that claims one, two, and three fall within the scope of Defendant's collateral-attack waiver. *See* Gov't's Resp. at 12-13. In his Plea Agreement, Defendant waived his right to collaterally challenge his conviction and sentence under 28 U.S.C. § 2255, except on the ground of ineffective assistance of counsel. *See* Plea Agreement at 9. These claims fall within the scope of this collateral-attack waiver as none involves ineffective assistance of counsel.

*2. Knowing and Voluntary Waiver*

With respect to this second factor, "[t]he defendant bears the burden to demonstrate that [his] waiver was not knowing and voluntary." *United States v. Smith*, 500 F.3d 1206, 1210 (10th Cir. 2007). The Court considers two factors when assessing a defendant's waiver. *See id.* at 1210. First, the Court examines "'whether the language of the Plea Agreement states that the defendant entered the plea agreement knowingly and

voluntarily.'" *Id.* at 1210-11 (quoting *Hahn*, 359 F.3d at 1324).[3]  Second, the Court examines the adequacy of the advisements and statements made during the Federal Rule of Criminal Procedure 11 colloquy. *Id.* at 1211.

Here, Defendant's Plea Agreement certified that "defendant knowingly and voluntarily" waived his right to collaterally attack his conviction or sentence. Plea Agreement at 9. And the Court conducted a lengthy Rule 11 colloquy, during which it ensured that Defendant was competent and understood the charge against him, the potential punishment on that charge, the sentencing process, the terms of the Plea Agreement, and in particular Defendant's waiver of rights in the Plea Agreement. *See* Plea Hr'g Tr. 4:12-21:3. Defendant stated on the record that he had reviewed the Plea Agreement, discussed it with his attorney, and understood its terms. *Id.* at 13:25-14:7. Defendant further stated that he understood the rights that he was waiving and that he wished to plead guilty anyway. *See id.* at 14:21-15:25. Following the colloquy and questioning by the Government regarding the factual basis of the plea, the Court found that Defendant's guilty plea was knowing and voluntary. *Id.* at 18:9-21:3. Accordingly, the Court accepted Defendant's guilty plea. *See id.*

---

[3] "A plea is 'knowing' if the defendant has a full understanding of what the plea connotes and of its consequences." *United States v. Vidal*, 561 F.3d 1113, 1119 (10th Cir. 2009) (internal quotation marks omitted). "[A] plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentation, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Bousley v. United States*, 523 U.S. 614, 619 (1998) (omissions and internal quotation marks omitted).

For these reasons, the record reflects that Defendant knowingly and voluntarily waived his right to collaterally attack his conviction and sentence.

      *3. Whether Enforcing the Waiver Would Result in a Miscarriage of Justice*

Finally, the Court must "determine whether enforcing the waiver will result in a miscarriage of justice." *Hahn*, 359 F.3d at 1327. To show that enforcing a waiver of collateral attack rights would result in a miscarriage of justice, Defendant must demonstrate one of the following: (1) that the district court relied on an impermissible factor such as race; (2) that the defendant received ineffective assistance of counsel in conjunction with negotiation of the waiver; (3) that the sentence exceeds the statutory maximum; or (4) that the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004); *Walker*, 2022 WL 2019972, at *2.

Here, there is no allegation that the Court relied on an impermissible factor in sentencing Defendant or that the sentence exceeds the statutory maximum. Defendant's contentions regarding ineffective assistance of counsel do not relate to counsel's negotiation of the waiver. And further, Defendant has not made any showing that the waiver was otherwise unlawful or suffered from error that would seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Accordingly, enforcing the waiver of Defendant's right to collaterally attack his conviction or sentence would not result in a miscarriage of justice.

### *4. Conclusion Regarding Waiver*

Having fully considered the motion, reviewed the record in this case, and applied the relevant factors, the Court finds that the waiver contained in the Plea Agreement is valid and enforceable and that Defendant has waived his right to bring claims one, two, and three through a 28 U.S.C. § 2255 motion.[4]

### B. Claim Four

In claim four, Defendant seeks relief on the basis that his retained attorney, Michael Johnson, rendered constitutionally ineffective assistance. *See* Def.'s Mot. at 8; Def.'s Reply at 2-6. To show that his counsel's performance was constitutionally ineffective, Defendant must demonstrate that the performance of counsel was deficient and that such deficiency prejudiced the outcome of the case. *See Strickland*, 466 U.S. at 687. To establish the first prong of the *Strickland* test, Defendant must show that counsel's performance was unreasonable under "prevailing professional norms." *Id.* at 688. The Supreme Court shuns specific guidelines for measuring deficient performance, as "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688-89. Defendant must overcome the presumption that the "challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "For

---

[4] Because Defendant has waived claims one, two, and three, the Court does not reach the Government's arguments regarding procedural bar or the merits of the claims.

counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

If Defendant shows deficient performance, he must also show prejudice by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. In making that determination, the Court must "tak[e] the unaffected findings as a given" and decide whether the outcome "would reasonably likely have been different absent the errors." *Id.* at 696.

The Court "may address the performance and prejudice components in any order" and "need not address both if [Defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

Defendant's Motion raises the following grounds to find his counsel's performance ineffective: (1) counsel failed to address perceived defects in Defendant's arrest warrant, (2) counsel allowed Defendant to plead guilty to a crime of which he was actually innocent, (3) counsel "gave away [Defendant's] right to appeal [without his] consent," and (4) counsel "repeatedly threatened [Defendant's] family to not talk." Def.'s Mot. at 5, 8; *see also* Def.'s Reply at 2-6. The Government argues that each of Defendant's claims of ineffective assistance is without merit because Defendant has failed to show that his counsel's performance fell below an objective standard of reasonableness or that Defendant

was prejudiced as a result of his counsel's deficient performance. *See* Gov't Resp. at 24-28.

### 1. Counsel's Failure to Address Perceived Defects in Defendant's Arrest Warrant

Liberally construed, Defendant argues that his attorney's performance was deficient because counsel failed to address perceived defects in Defendant's federal arrest warrant. *See* Def.'s Mot. at 8. Specifically, Defendant takes issue with the fact that while he was arrested by the FBI on June 4, 2020, a federal arrest warrant did not issue until the next day. *See id.* at 4. Defendant's argument turns on a misunderstanding of the facts, however.

Defendant was not initially arrested on the yet-to-be-issued federal warrant, but instead was arrested on a state arrest warrant that had issued on June 2, 2020. *See* Gov't's Resp. Ex. 3, State Arrest Warrant (Doc. No. 58-3). Because Defendant was lawfully arrested on June 4, 2020, pursuant to the state warrant,[5] his argument that his initial arrest was unlawful is meritless. Accordingly, failure to raise this issue does not amount to deficient performance by counsel. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006).

### 2. Actual Innocence

The Government construes Defendant's ineffective assistance of counsel claim to include an allegation that his attorney rendered ineffective assistance by allowing

---

[5] To the extent that Defendant argues that the state arrest warrant was defective because it was not notarized, did not have a case number, and was not signed by a police officer, the Court rejects these arguments. The warrant complies with the requirements of title 22, section 173 of the Oklahoma Statutes. *See* State Arrest Warrant at 2.

Defendant to plead guilty to a crime of which he was actually innocent. *See* Gov't's Resp. at 25-26.[6] Liberally construed, Defendant argues that his attorney rendered ineffective assistance by failing to raise the argument that the AK Rifle "met the ATF definition of 'machinegun' when [Defendant] legally purchased it." Def.'s Mot. at 5; *see also* Def.'s Reply at 2-3.

Defendant admitted multiple times, including once under oath, that he himself modified the AK-47 to "select fire," however. *See* Plea Hr'g Tr. 18:14-24; PSR ¶¶ 29, 31.[7] Defendant does not allege that these prior statements are inaccurate or were coerced. Considering that Defendant admitted to converting the AK Rifle into a machinegun, Defendant has not shown that his attorney acted unreasonably by failing to raise the argument that the firearm "met the ATF definition of 'machinegun' when [Defendant] legally purchased it," Def.'s Mot. at 5, or by allowing Defendant to plead guilty to the crime charged. Defendant has similarly failed to demonstrate that he was prejudiced by counsel's actions or failure to act in this regard.

---

[6] While the Government notes that Defendant has not properly raised a claim of actual innocence because it is not a standalone basis for relief pursuant to § 2255, the Court finds that it is appropriate to addresses the allegation in relation to Defendant's ineffective assistance of counsel claim. *See* Gov't's Resp. at 25-26.

[7] Defendant suggests that because one part of the AK Rifle was stamped "1976," his possession of the firearm was lawful. *See* Def.'s Mot. at 5; Def.'s Reply at 2-3. Section 922(o) "prohibits the possession of any machinegun made after that statute's effective date in 1986." *United States v. Dalton*, 960 F.2d 121, 122 (10th Cir. 1992) (emphasis omitted). It is likewise unlawful, however, to possess a firearm that "was converted into a machinegun after the statute's effective date of May 19, 1986." *Id*. at 123.

### *3. Waiver of Appellate Rights*

Defendant argues that his attorney rendered ineffective assistance of counsel when he "gave away [Defendant's] right to appeal [without] [Defendant's] consent." Def.'s Mot. at 8. The Court has previously found that Defendant was adequately advised of the consequence of the waiver of his appellate rights contained in the Plea Agreement and that Defendant's waiver was voluntary. Further, Defendant's trial counsel stated in his affidavit that he "explained repeatedly [Defendant's] right to appeal" and that Defendant understood that he was waiving that right, except in limited circumstances, by entering into the Plea Agreement. Gov't's Resp. Ex. 4, Johnson Aff. ¶ 8 (Doc. No. 58-4).

Defendant also argues that there is "no signature or statement from [Defendant] ever giving away [his] right to appeal." Def.'s Mot. at 8. This is inaccurate: Defendant signed the Plea Agreement, which contains an express waiver of his right to appeal his conviction and sentence except in limited circumstances. In both the Plea Agreement itself and in the Rule 11 colloquy, Defendant confirmed that he had an adequate opportunity to review the Plea Agreement and discuss it with counsel. During the Rule 11 colloquy, the Court specifically discussed that in the Plea Agreement Defendant was waiving his right to appeal his conviction and sentence except in limited circumstances, and Defendant stated that he understood that was so and still asked the Court to accept his guilty plea.

Accordingly, Defendant has made no showing that his attorney's assistance was objectively unreasonable in negotiating the Plea Agreement resulting in the waiver of Defendant's appellate rights.

### 4. *Alleged Threats to Defendant's Family Members*

Defendant claims that his trial counsel "threatened [Defendant's] family not to talk." Def.'s Mot. at 8.[8] Defendant does not provide examples of any specific statement or threats made by counsel, however. Counsel represents that he did tell Defendant's family not to "post inflammatory material" on social media because the FBI was monitoring their social media accounts. *See* Johnson Aff. ¶ 7. Having considered the parties' arguments, the Court concludes that Defendant has failed to show that counsel's statements to Defendant's family members regarding their social media was unreasonable or that this admonishment prejudiced Defendant in any way.

### 5. *Conclusion Regarding Defendant's Ineffective Assistance of Counsel Claim*

Having reviewed the record and liberally construed Defendant's argument regarding his claims of ineffective assistance of counsel, the Court concludes that Defendant has failed to show that his retained trial counsel was ineffective. Accordingly, Defendant is not entitled to relief pursuant to § 2255 on this basis.

---

[8] Defendant further states that his trial counsel insulted Defendant, lied to Defendant, and "omitted legal information and documents from ever showing them to [Defendant]." Def.'s Mot. at 8. Beyond general assertions, which counsel refutes, *see* Johnson Aff. ¶¶ 7-9, 12, Defendant provides no specific facts or details regarding these allegations and does not explain how this alleged conduct caused him prejudice. These general assertions are consequently insufficient to support Defendant's claim for ineffective assistance of counsel. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting defendant's ineffective-assistance arguments and explaining that the court is "not required to fashion [the defendant's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments").

CONCLUSION

For the reasons explained above, Defendant Christopher Steven Ledbetter's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a defendant. A COA may issue only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Upon consideration, the Court concludes that the requisite standard is not met in this case. Therefore, a COA is denied.

Defendant's motions relating to his previously dismissed appeal (Doc. Nos. 61, 62) are DENIED AS MOOT.

A separate judgment shall be entered.

IT IS SO ORDERED this 12th day of August, 2024.

*[signature]*
CHARLES B. GOODWIN
United States District Judge